UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:14-cv-00081-FDW

| | |
|---|---|
| PATRICIA L. SHAW, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CAROLYN W. COLVIN, )<br>)<br>Defendant. )<br>)<br>) | ORDER |

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 7) and "Memorandum of Argument in Support…" (Doc. No. 7-1), both filed on August 18, 2014; and Defendant Commissioner's Motion for Summary Judgment (Doc. No. 8) and "Memorandum of Law in Support…" (Doc. No. 9), both filed October 14, 2014. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability insurance benefits.

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Plaintiff's Motion for Summary Judgment is DENIED, Defendant's Motion for Summary Judgment is GRANTED, and the Commissioner's decision is AFFIRMED.

**I.    BACKGROUND**

On July 28, 2010, Plaintiff filed an application for a period of disability and Social Security disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), alleging that she was unable to work as of May 13, 2007. (Tr. 44, 251). Plaintiff

1

subsequently amended her alleged onset date to February 7, 2008. (Tr. 74). Plaintiff's date last insured is December 31, 2010. (Tr. 46, 73).

At Plaintiff's request, Administrative Law Judge James A. Wendland (the "ALJ") held a hearing on October 1, 2012 in Denver, Colorado, at which Plaintiff was represented by counsel. (Tr. 70-116).[1] On October 16, 2012, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 44-54). On December 12, 2013, the Appeals Council denied Plaintiff's request for review (Tr. 7-11), rendering the ALJ's decision the Commissioner's final decision in this case.

After the Appeals Council denied Plaintiff's request for further administrative review, Plaintiff timely filed the present action on April 3, 2014. (Doc. No. 1). The parties' Motions for Summary Judgment are now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. DISCUSSION

### A. Choice of Law

The Act provides that any action for judicial review of a final decision of the Commissioner "shall be brought in the district court of the United States for the judicial district in which the plaintiff resides… ." 42 U.S.C. § 405(g). In this case, venue lies in this court because Plaintiff alleges in her complaint that she is a resident of Polk County, which is within this district. (Doc. No. 1 ¶ 2); 28 U.S.C. § 113(c). Nevertheless, because the hearing before the ALJ was held in the District of Colorado, which lies within the Tenth Circuit, the standards prevailing in that circuit control the merits of the review of the ALJ's decision. See Mannella v. Astrue, No. CV 06-469-TUC-CLK (BPV), 2008 WL 2428868, at *15 (D. Ariz. 20 Feb. 2008)

---

[1] Plaintiff moved from Colorado to North Carolina prior to filing this action. (Doc. No. 7 at 1).

(mag. judge's rep. & recommendation) (applying the law of the Tenth Circuit to review the ALJ's decision because the hearing was held there, rather than law of the Ninth Circuit where the district court was located), adopted in part and rejected in part on other grounds, 2008 WL 2428869 (June 12, 2008) (adopting choice of law ruling at *1). The Court will therefore cite to precedent from the Tenth Circuit in its analysis. For informational purposes, the Court will also cite to Fourth Circuit precedent as appropriate.

   **B. Standard of Review**

Judicial review of a final decision of the Commissioner in social security cases is authorized pursuant to 42 U.S.C. § 405(g) and is limited to consideration of (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner applied the correct legal standards. Watkins v. Barnhart, 350 F.3d 1297, 1299 (10th Cir. 2003); see also Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 390 (1971); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987)). District courts do not review a final decision of the Commissioner de novo. Sisco v. U.S. Dept. of Health & Human Serv., 10 F.3d 739, 741 (10th Cir. 1993); see also Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). A reviewing court must uphold the decision of the Commissioner, even in instances where the reviewing court would have come to a different conclusion, so long as the Commissioner's decision is supported by substantial evidence. Grogan v. Barnhart, 399 F.3d 1257, 1262 (10th Cir. 2005); see also Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting Hackett v.

Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005)); see also Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Richardson, 402 U.S. at 401). "It requires more than a scintilla, but less than a preponderance." Lax at 1084 (citing Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)); see also Mastro, 270 F.3d at 176 (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966), overruled by implication on other grounds by Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003)); Parker v. Kraft Foods Global, Inc., No. 3:07-cv-87, 2010 WL 1929555, at *5 (W.D.N.C. May 12, 2010). In reviewing for substantial evidence, a court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. See Medina v. Colvin, 2013 WL 4051922, at *4 (citations omitted) ("On appeal, a reviewing court's job is neither to 'reweigh the evidence nor substitute our judgment for that of the agency.'"); see also Barnes ex rel. T.J. v. Colvin, No. 4:12-cv-254, 2014 WL 126039, at *1 (E.D.N.C. Jan. 13, 2014) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996), superseded by regulation on other grounds, 20 C.F.R. § 416.927). The ALJ, and not the Court, has the ultimate responsibility for weighing the evidence and resolving any conflicts. Hays, 907 F.2d at 1456.

### III. ANALYSIS

The question before the ALJ was whether Plaintiff was "disabled" under the Social Security Act between February 7, 2008 and the date of the ALJ's decision.[2] Plaintiff has the burden of proving she was disabled within the meaning of the Social Security Act in order to be entitled to benefits. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

---

[2] "Disability" is defined under the Social Security Act, 42 U.S.C. § 301, et seq., as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

On October 16, 2012, the ALJ found that Plaintiff was not "disabled" at any time between February 7, 2008 and the date of his decision. (Tr. 44-54). Under the Social Security Act, there is a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a)(1). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable impairment or a combination of impairments that is severe; (3) whether the claimant's impairment or combination of impairments meets or medically equals one of The Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant has the residual functional capacity ("RFC") to perform the requirements of her past relevant work; and (5) whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i-v).

In this case, the ALJ determined that Plaintiff was not disabled under the fifth step of the sequential evaluation process. (Tr. 53-54). The ALJ concluded that, "[t]hrough the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (Tr. 53).

On appeal, Plaintiff presents the following assignments of error: (1) the ALJ failed to properly apply the Psychiatric Review Technique ("PRT") at Step Two; (2) the ALJ failed to employ the regulatory standard for subjective pain complaints; (3) the ALJ failed to provide work-related terms for RFC; and (4) the ALJ failed to carry the Commissioner's burden at Step Five. (Doc. No. 7). Turning to the arguments in this case, the Court has reviewed the pleadings and briefs and has construed to the best of its ability Plaintiff's assignments of error and

5

addresses those below.

### A. The ALJ properly applied the PRT at Step Two

Plaintiff argues that the ALJ failed to properly apply the PRT at Step Two because the ALJ improperly assessed severity and the findings were not supported by substantial evidence.

#### 1. Assessment of the Severity of Plaintiff's Conditions Under Step Two

After review of the ALJ's decision, the Court finds for the reasons below that the ALJ properly assessed the severity of Plaintiff's impairments, and the ALJ's findings were supported by substantial evidence.

Step Two of the sequential evaluation process, the "severity" step, requires only a threshold showing that a claimant's combined impairments are more than de minimis, i.e., that the claimant's combined impairments "significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If such a threshold showing is made, as occurred in this case (Tr. 46-47), the evaluation proceeds to the next step in the process. It is well-established that an ALJ's failure to find a particular impairment to be severe at Step Two does not constitute reversible error, despite the ALJ's finding that the claimant does, indeed, have other severe impairments and has accordingly proceeded to the succeeding steps in the evaluation process. See Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) ("Nevertheless any error [in not finding a specific impairment "severe" at step two] here became harmless when the ALJ reached the proper conclusion that Ms. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.") (remanded on other grounds); Hill v. Astrue, 289 Fed. App'x 289, 291 (10th Cir. 2008) ("Once

the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for the purposes of step two.") (emphasis in original); Maziarz v. Sec'y of HHS, 837 F.2d 240, 244 (6th Cir. 1987). See also Powell v. Astrue, 927 F.Supp.2d 267, 274 (W.D.N.C. 2013) (holding that "[w]here an ALJ has already determined that a plaintiff suffers from at least one severe impairment, any failure to categorize an additional impairment as severe generally cannot constitute reversible error, because, upon determining that a claimant has one severe impairment, the Secretary must continue with the remaining steps in his disability evaluation.")

In this case, once the ALJ concluded that Plaintiff's multilevel degenerative disc disease was a severe impairment, he was justified in proceeding to the next step in the evaluation process notwithstanding the seven other conditions that Plaintiff reported and the ALJ referenced in his findings. (Tr. 46). Therefore, the ALJ was within his discretion in proceeding to Step Three after concluding that Plaintiff's multilevel degenerative disc disease was a severe impairment.

Regarding the PRT, Plaintiff argues that the ALJ's PRT "does not comport with the regulatory guidance for assessing mental impairment at Step Two." (Doc. No. 7). Specifically, Plaintiff contends that the ALJ erred in failing to thoroughly review the evidence as it relates to each of the four functional areas of the PRT. Id. Upon reviewing the record, the Court finds that the ALJ properly applied the PRT described at 20 C.F.R. § 404.1520(a) in assessing Plaintiff's mental impairment at Step Two. (Tr. 46-47). Specifically, the ALJ acknowledged that the only record from Plaintiff's psychiatrist, Dr. Suddath, during the time at issue states that Plaintiff's mood was "relatively stable" with her medication. (Tr. 51, 440). Moreover, Dr. Suddath described symptoms in the March 2011 report that had been present during a major depression, but the record does not reflect that Plaintiff had a major depressive episode during the period at

7

issue. (Tr. 441-442). In fact, evidence provided by the Boulder Pain Clinic throughout the time at issue describes Plaintiff as either having a normal mood or as being only "mildly depressed." (Tr. 350-360). Finally, the ALJ discussed each functional area and concluded that Plaintiff had only mild limitation in activities of daily living for the first functional area, most of which the ALJ found to be due to physical problems (Tr. 47); no limitation in social functioning for the second functional area (Tr. 47); only mild limitation in concentration, persistence or pace for the third functional area (Tr. 47); and no episodes of decompensation which have been of extended duration for the fourth and final functional area. (Tr. 47) The ALJ concluded that, "[b]ecause the claimant's medically determinable mental impairment caused no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, it was non-severe." Id. Accordingly, this argument by Plaintiff is without merit since the record reflects that the ALJ thoroughly reviewed the evidence as it relates to each of the four functional areas of the PRT.

### 2. Substantial evidence supports the ALJ's assessments of credibility, fibromyalgia, pain and RFC.

On the second issue, Plaintiff argues that the ALJ's assessments of credibility, fibromyalgia, pain and RFC did not follow applicable law and were not supported by substantial evidence. (Doc. No. 7-1 at 15-19). Upon reviewing the record, the Court finds that the ALJ's determinations as to credibility, fibromyalgia, pain and RFC were supported by substantial evidence.

Plaintiff first argues that the ALJ improperly assessed the credibility of the relevant evidence in this case. (Doc. No. 7-1 at 16). It is well-established that credibility determinations

are peculiarly in the province of the finder of fact; however, assessments as to the credibility of evidence must be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. See Kepler v. Chafer, 68 F.3d 387 (10th Cir. 1995). In the present case, the ALJ indicated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and the other evidence, based on 20 C.F.R. § 404.1529 (2014) and SSRs. 96-4p and 96-7p." (Tr. 48). Specifically, the ALJ followed a two-step process in considering Plaintiff's symptoms. (Tr. 48). First, the ALJ considered whether there was "an underlying medically determinable physical or mental impairment(s) – i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques – that could reasonably be expected to produce the claimant's pain or other symptoms." (Tr. 48-52). Second, the ALJ evaluated "the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." (Tr. 48-52). It is within the province of the ALJ to assess the credibility of the relevant evidence, and the Court is satisfied that the record reflects that the ALJ properly evaluated the credibility of the evidence presented in this case as the finder of fact. Accordingly, Plaintiff's contention that the ALJ improperly assessed the credibility of the relevant evidence is without merit.

Plaintiff next argues that the ALJ improperly assessed Plaintiff's fibromyalgia and subjective pain complaints. (Doc. No. 7-1 at 16-19). Specifically, Plaintiff contends that the ALJ failed to address the location, duration, frequency, and intensity of the pain that Plaintiff alleged. (Doc. No. 7-1 at 18). It is well-established that subjective pain complaints must be supported by objective medical evidence showing the existence of a medical impairment which could

reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant. See Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993); see also Craig v. Chater, 76 F.3d 585, 591 (4th Cir. 1996). As noted above, the record in the present case establishes that the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and the other evidence, based on 20 C.F.R. § 404.1529 (2014) and SSRs. 96-4p and 96-7p." (Tr. 48). In particular, the ALJ acknowledged Plaintiff's subjective pain allegations throughout his decision. (Tr. 48, 49, 50, 51). Furthermore, as the ALJ noted, the record reflects that, during the relevant time period, Plaintiff reported that her pain patch was "very effective" and that she was "doing well." (Tr. 356). Finally, in April 2010, Dr. Tran indicated that Plaintiff "has done well with her current pain regime." (Tr. 454). Accordingly, the Court finds that the ALJ properly assessed Plaintiff's fibromyalgia and subjective pain complaints utilizing objective medical evidence, and those assessments are supported by substantial evidence.

Finally, Plaintiff contends that the ALJ failed to evaluate "other evidence" in arriving at the RFC in this case, which includes activities of daily living. (Doc. No. 7 at 16). However, the record shows that the ALJ did, in fact, discuss Plaintiff's reported activities, consisting of cooking, shopping, caring for a pet, watering her garden, driving, paying bills, doing online banking, and cleaning. (Tr. 49, 51-52). The ALJ also acknowledged that Plaintiff rode a bicycle and traveled frequently and extensively in the Caribbean. (Tr. 50-51). Moreover, the record indicates that Plaintiff was hiking "a lot" (Tr. 357), dating (Tr. 440), exercising regularly (Tr. 452), and working with a stroke patient in a third world country. (Tr. 353). The ALJ also reviewed and considered Plaintiff's descriptions of how she did these activities and noted that

there was some inconsistent evidence,[3] but it was nonetheless apparent that she engaged in a significant range of activities that supported the ALJ's RFC determination. (Tr. 49, 51-52). Accordingly, Plaintiff's argument that the ALJ's RFC determination is not supported by substantial evidence is without merit.

### B. The ALJ provided proper functional limits in work-related terms at Step Four

On the third issue, Plaintiff argues that the ALJ did not provide proper functional limits in work-related terms at Step Four in the sequential evaluation process. (Doc. No. 7 at 19). In particular, Plaintiff contends that the ALJ's limit to "not be required to do repetitive up and down or side to side neck movements for more than 10% out of an eight hour day," (Tr. 48), is not stated in work-related terms, as required by 20 C.F.R. § 404.1545 (2014). Upon review of the record, however, the Court finds that the ALJ did, in fact, provide proper functional limits in work-related terms at Step Four. The limitation expressed by the ALJ that Plaintiff cannot perform "repetitive up and down or side to side neck movements for more than 10 percent of an eight-hour day," (Tr. 48), is a "work-related term," because it relates to limits on Plaintiff's ability to meet the strength requirements of jobs. See e.g., Lloyd v. Colvin, 2014 WL 503765, at *12 (D. Colo., Feb. 6, 2014) (citing 20 C.F.R. § 404.154(b); quoting Baker v. Baker, 84 Fed. Appx. 10, 13 (10th Cir. 2003)) (finding that the requisite "assessment of one's physical abilities for an RFC determination" includes the ALJ's consideration of "manipulative or postural functions, such as reaching, handling, stooping or crouching," as well as "sitting, standing"). Additionally, the ALJ acted reasonably in determining this limitation pursuant to the requirements of the regulations, i.e., the ALJ assessed the nature of Plaintiff's physical

---

[3] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." Lax v. Astrue, 489 F.3d 1080, 1084.

limitations, and then he assessed the extent of the limitation as required by 20 C.F.R. § 404.1545(b). (Tr. 48-52). Accordingly, the ALJ found that Plaintiff could not perform repetitive up and down or side to side neck movements for more than 10 percent of an eight-hour day as a result of the limitations in the use of Plaintiff's neck that the ALJ acknowledged during his analysis. (Tr. 48-52).

Furthermore, the ALJ's statement in the record that he did not know what jobs would require up and down or side to side neck movements, (Tr. 109-110), does not detract from the validity of the limitation expressed by the ALJ. The ALJ is not required or expected to know what jobs may be performed with particular limitations; rather, the ALJ may utilize the services of a VE to resolve such questions. 20 C.F.R. § 404.1566(e). See Hargis v. Sullivan, 945 F.2d 1482 (10th Cir. 1991); see also Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002) (holding that, in determining jobs that can be performed by persons with specific functional limitations, the ALJ should consult with a VE to determine the impact of such functional limitations on the occupation base). Here, the ALJ properly utilized the testimony of the VE to determine the jobs that can be performed with Plaintiff's particular limitations. (Tr. 103-110).

Finally, the hypothetical question to the VE appropriately set out Plaintiff's limitations, which were included in her properly determined RFC. The VE testified that a cashier job does not require repetitive up and down or side to side neck movements. (Tr. 110). More specifically, the VE testified that a cashier has to look at an item and her head is turning, but it does not constitute repetitive up and down or side to side neck movements as contemplated in the ALJ's limitation. (Tr. 110). Moreover, the ALJ did not leave the "determination of function" up to the VE during the hypothetical questioning. Rather, when the ALJ told the VE that it was "up

to you to determine," the ALJ was telling the VE that it was up to her to determine how much reaching was involved in a cashier job. (Tr. 110). The ALJ also did not need to further clarify the term "repetitive" because the ALJ indicated during the hypothetical questioning of the VE that he was referring to the movement of the neck and said that he meant not only simple movements of the neck, but rather back and forth repeatedly or up and down repeatedly. (Tr. 109).

Therefore, Plaintiff's argument that the ALJ failed to provide proper functional limitations in work-related terms at Step Four and a properly determined RFC to the VE during the hypothetical question is without merit.

### C. The Commissioner met her burden at Step Five

Finally, Plaintiff argues that the Commissioner did not meet her burden at Step Five in the sequential evaluation process. (Doc. No. 7). At Step Five, the burden shifts to the Commissioner to demonstrate that jobs exist in substantial numbers in the local and national economies that the plaintiff can perform. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). In meeting this burden, an ALJ may rely on testimony provided by a VE. See Hargis v. Sullivan, 945 F.2d 1482 (10th Cir. 1991); see also Walls v. Barnhart, 296 F.3d 287, 291 (4th Cir. 2002).

In the present case, the ALJ asked the VE whether there were jobs in the national economy that could be performed by an individual of the same age, education level, past work experience of Plaintiff, and with the RFC that was properly determined by the ALJ. (Tr. 103-104). The VE responded that such an individual would be able to perform light cashier jobs and noted that these jobs exist in significant numbers (approximately 11,100 light cashier jobs in Colorado and approximately 797,000 light cashier jobs nationally). (Tr. 104). In light of this

13

testimony from the VE, substantial evidence exists to support the Commissioner's determination that jobs exist in substantial numbers in the local and national economies that Plaintiff can perform. Therefore, the Commissioner's burden at Step Five is met.

In sum, the Court is satisfied that substantial evidence supports the ALJ's decision and there is no reversible error.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 7) is DENIED, Defendant's Motion for Summary Judgment (Doc. No. 8) is GRANTED, and the Commissioner's decision is AFFIRMED. The Clerk's Office is directed to CLOSE THE CASE.

**IT IS SO ORDERED.**

Signed: November 24, 2014

Frank D. Whitney
Chief United States District Judge